**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JANE DOE INDIVIDUALLY** | : | |
| **AND ON BEHALF OF JOHN DOE** | | |
| c/o Albeit Masters, LLC | : | |
| 4200 Regent Street, Suite 210 | | |
| Columbus, Ohio 43219 | : | |
| | | |
|     **Plaintiffs,** | : | |
| | | |
| | | **Case No. 2:23-cv-02704** |
| **v.** | : | |
| | | **Judge:**_____ |
| **TEAYS VALLEY LOCAL SCHOOL** | : | |
| **BOARD OF EDUCATION** | | **COMPLAINT & JURY DEMAND** |
| 385 Viking Way | : | |
| Ashville, Ohio 43103 | | |
| | : | |
|     **and** | | |
| | : | |
| **MANDY DAVIS** | | |
| c/o Ohio Reformatory for Women | : | |
| Inmate #W109038 | | |
| 1479 Collins Avenue | : | |
| Marysville, Ohio 43040 | | |
| | : | |
|     **and** | | |
| | : | |
| **MICHAEL KAUFFELD** | | |
| 5578 Durrett Road | : | |
| Orient, Ohio 43146 | | |
| | : | |
|     **and** | | |
| | : | |
| **MARCY AQUINO** | | |
| 15150 Gibson Road | : | |
| Ashville, Ohio 43103 | | |

**and**                                    :

**MALLORY BECKMAN**                        :
12404 Walker Road
Ashville, Ohio 43103                       :

**and**                                    :

**CALLIE CROSBY**                          :
506 Greenhill Drive
Groveport, Ohio 43125                      :

**and**                                    :

**JOYCE DUCHAK**                           :
6057 Haig Point Court
Westerville, Ohio 43082                    :

**and**                                    :

**AMBER RICE**                             :
10760 Timberwood Place
Ashville, Ohio 43103                       :

**JOHN ROES 1-5**                          :

**Defendants.**                            :

## **COMPLAINT**

Now come Plaintiffs, by and through counsel, and for their Complaint state as follows:

## **INTRODUCTION**

1.      This action arises from Defendants Teays Valley Local School District Board of

Education, Michael Kauffeld, Marcy Acquino, Mallory Beckman, Callie Crosby, Joyce Duchak,

Amber Rice, and John Roes 1-5's actions and failures to act upon Defendant Davis' grooming

and sexual harassment of Plaintiff John Doe[1], which enabled and permitted Defendant Davis, who

was 33 years-old, to rape minor Plaintiff John Doe.

---

[1] Plaintiffs have contemporaneously filed a Motion for Permission to Proceed Under Pseudonym pursuant
to Doe v. Porter, 370 F.3d 558 (6th Cir. 2004).

**PARTIES**

2.      Plaintiff John Doe is a 14 year-old male who attended Teays Valley Middle School (hereinafter "TVMS") during the 2020-2021 school year, which is a school in the Teays Valley Local School District located in Ashville, Ohio. John Doe is a resident of Madison County, Ohio.

3.      Plaintiff Jane Doe is the natural mother of John Doe, and is a resident of Madison County, Ohio.

4.      Defendant Teays Valley Local School District Board of Education (the "Board") is an entity located in the State of Ohio which operates and maintains the public school system, Teays Valley Local School District, in Pickaway County, Ohio.

5.      Defendant Mandy Davis (hereinafter "Davis") is a resident of Marysville, Union County, Ohio, where she is an inmate at the Ohio Reformatory for Women, and was, at all times relevant herein, an employee of the Board when she committed acts and omissions, and engaged in reckless and wanton conduct. Davis is being sued in her individual and official capacities.

6.      Upon information and belief, Defendant Michael Kauffeld (hereinafter "Kauffeld") is a resident of Orient in Pickaway County, Ohio, and at all times relevant herein, was employed by the Board as the Principal of TVMS. Kauffeld was an employee and agent of the Board when he engaged in the acts, omissions, and failures, including reckless and wanton conduct stated in this Complaint, and he is being sued in his individual and official capacities.

7.      Upon information and belief, Defendant Marcy Aquino (hereinafter "Aquino") is a resident of Ashville in Pickaway County, Ohio, and at all times relevant herein, was employed by the Board as the Assistant Principal of TVMS. Aquino was an employee and agent of the Board when she engaged in the acts, omissions, and failures, including reckless and wanton conduct stated in this Complaint, and she is being sued in her individual and official capacities.

8.    Upon information and belief, Defendant Mallory Beckman (hereinafter "Beckman") is a resident of Ashville in Pickaway County, Ohio, and at all times relevant herein, was employed by the Board as a secretary at TVMS. Beckman was an employee and agent of the Board when she engaged in the acts, omissions, and failures, including reckless and wanton conduct stated in this Complaint, and she is being sued in her individual and official capacities.

9.    Upon information and belief, Defendant Callie Crosby (hereinafter "Crosby") is a resident of Groveport in Franklin County, Ohio, and at all times relevant herein, was employed by the Board as a lunchroom monitor and classroom aide at TVMS. Crosby was an employee and agent of the Board when she engaged in the acts, omissions, and failures, including reckless and wanton conduct stated in this Complaint, and she is being sued in her individual and official capacities.

10.    Upon information and belief, Defendant Joyce Duchak (hereinafter "Duchak") is a resident ofWesterville in Franklin County, Ohio, and at all times relevant herein, was employed by the Board as the guidance counselor at TVMS. Duchak was an employee and agent of the Board when she engaged in the acts, omissions, and failures, including reckless and wanton conduct stated in this Complaint, and she is being sued in her individual and official capacities.

11.    Upon information and belief, Defendant Amber Rice (hereinafter "Rice") is a resident of Ashville in Pickaway County, Ohio, and at all times relevant herein, was employed by the Board as a secretary at TVMS. Rice was an employee and agent of the Board when she engaged in the acts, omissions, and failures, including reckless and wanton conduct stated in this Complaint, and she is being sued in her individual and official capacities.

12.    At all times relevant herein, John Roes 1-5 were employees or agents of the Board when they engaged in the acts, omissions, and failures, including reckless and wanton conduct

stated in this Complaint, and are being sued in their individual and official capacities.

13. At all times relevant herein, Defendants were agents and/or employees of the Board, acting within the scope, course, and authority of their employment and employer in a wanton or reckless manner.

14. At all times relevant herein, Defendants owed John Doe a duty of protection from sexual harassment and the grooming conduct of Defendant Davis.

**JURISDICTION & VENUE**

15. This Court has subject matter jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a).

16. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to Plaintiffs' claims occurred in Pickaway County, Ohio, which is within this district; all Defendants also reside within this district.

**FACTUAL ALLEGATIONS**

### Roles of the Parties

17. During the 2020-2021 school year, John Doe was an 11 and 12 year-old boy without an individualized education plan (hereinafter "IEP"), enrolled as a full-time sixth grade student at TVMS.

18. Kauffeld was the principal of TVMS during the 2020-2021 school year, and he owed a duty to John Doe to protect him from the harm of abuse by staff, including classroom aides, and had a legal duty to supervise and discipline Davis.

19. Aquino was the assistant principal of TVMS during the 2020-2021 school year, and she owed a duty to John Doe to protect him from the harm of abuse by staff, including

classroom aides, and had a legal duty to supervise and discipline Davis.

20.     Beckman was a lunchroom monitor and front office assistant at TVMS during the 2020-2021 school year, and she owed a duty to John Doe to protect him from the harm of abuse by staff, including classroom aides.

21.     Crosby was a lunchroom monitor at TVMS during the 2020-2021 school year, and she owed a duty to John Doe to protect him from the harm of abuse by staff, including classroom aides.

22.     Duchak was the school guidance counselor at TVMS during the 2020-2021 school year, and she owed a duty to John Doe to protect him from the harm of abuse by staff, including classroom aides.

23.     Rice was a secretary at TVMS during the 2020-2021 school year, and she owed a duty to John Doe to protect him from the harm of abuse by staff, including classroom aides.

24.     Davis was a one-on-one classroom aide at TVMS during the 2020-2021 school year, and she owed a duty to John Doe to protect him from the harm of abuse by staff, including classroom aides.

25.     A one-on-one aide is a paraprofessional assigned to a student with a disability to help implement the student's IEP; a one-one-one aide is required to hold an educational aide permit issued by the Ohio Department of Education.

26.     Davis was not assigned to be a one-on-one aide to John Doe at TVMS, and was not scheduled nor required to interact with John Doe at TVMS.

27.     As school employees, Defendants had a non-delegable duty to immediately report to law enforcement or children's services any reasonable cause to believe that John Doe suffered or faced the threat of suffering any physical or mental wound, injury, disability or condition of a

nature that reasonably indicates abuse or neglect.

28.     Upon information and belief, John Roes 1-5 are other Board employees who possessed reasonable cause to believe that John Doe suffered or faced the threat of suffering any physical or mental wound, injury, disability or condition of a nature that reasonably indicates abuse or neglect, but have yet to have be identified by Plaintiffs.

**Defendants' Knowledge of Defendant Davis' Harassment & Grooming of John Doe**

29.     During the 2020-2021 school year, in approximately February of 2021, Davis began aggressively grooming John Doe for a sexual relationship.

30.     Davis' grooming consisted of spending extraordinary and unnecessary time with John Doe at TVMS including but not limited to:

>       a.      Accompanying and escorting him to and from classes, lunch, and the restroom;
>
>       b.      Walking closely with him so their bodies were in physical contact and whispering in the hallways;
>
>       c.      Having intimate conversations with John Doe on District property about his genitalia;
>
>       d.      Communicating with John Doe by cell phone on and off District property; and
>
>       e.      Giving John Doe cannabidiol oil (hereinafter "CBD") on District property to distort his senses, lower his inhibitions, and alter his mind.

31.     Davis' grooming also consisted of pulling John Doe out of his regularly scheduled classes, and walking into unoccupied, dark and unlit rooms and areas of TVMS with John Doe to enable her to have alone time with him.

32.     Davis also mentally and emotionally abused John Doe regularly by telling John Doe that her husband was abusive, that she could go to jail, and that she would kill herself if she could not be with him.

33.     Upon information and belief, John Doe is not the only student Davis groomed at TVMS.

34.     Davis' grooming of John Doe was common knowledge at TVMS, was the source of school gossip, and was regularly the topic of discussion amongst TVMS staff during the months of February, March, April and May of 2021.

35.     Defendants were aware of such grooming behavior by Davis, but failed to immediately report it to children's services, law enforcement or to John Doe's mother, and never investigated it under Title IX nor under any other Board policy.

36.     Defendants enabled Davis' grooming of John Doe by continuing to allow her to spend uninterrupted time with him at TVMS, and by failing to discipline or terminate her in response to multiple and consistent complaints of her inappropriate conduct toward and with John Doe.

37.     Defendant Beckman's knowledge of Davis' grooming, harassing, and abusive behavior included, but is not limited to:

       a.     On approximately March 16, 2021, Defendant Beckman noticed John Doe would not leave Davis' side in the cafeteria, and Beckman started paying closer attention to John Doe and Davis' interactions at that time.

       b.     Also in March of 2021, Beckman noticed Davis repeatedly and consistently bending over to whisper to John Doe in the lunchroom, noticed Davis ignoring her assigned one-on-one special needs student to

stand next to John Doe instead, and watched Davis follow John Doe to the bathroom and wait outside for him on multiple occasions.

c.  Defendant Beckman also noticed that John Doe regularly waited for Davis to walk out of the lunchroom together, despite John Doe's lunch table having been one of the first tables dismissed.

d.  Beckman witnessed Davis attending John Doe's gym class, and witnessed Davis and John Doe shoulder-to-shoulder and talking only to one another while other students were participating in gym class; Davis was not supposed to be in John Doe's gym class.

e.  In March of 2021, Beckman requested that Defendant Kauffeld, the TVMS principal, attend lunch in the cafeteria to witness Davis' grooming and harassing behavior toward John Doe.

f.  Beckman also relayed her concerns about Davis' harassing behavior toward John Doe to Defendant Duchak, the school guidance counselor, in March of 2021.

g.  On April 15, 2021, Defendant Beckman witnessed Davis write the word "love" on John Doe's wrist, which mimicked Davis' own "love" tattoo on her wrist (hereinafter the "Tattoo Incident").

38.  Despite the harassing and grooming behavior Beckman witnessed, she failed to immediately report it to children's services or law enforcement, or to John Doe's mother, and failed to initiate an investigation into Davis' conduct as required by Board policy. She acted with deliberate indifference to John Doe's safety, and her failures to act were wanton or reckless.

39.  Defendant Crosby's knowledge of Davis' grooming, harassing, and abusive

behavior included, but is not limited to:

a.     As early as February of 2021, Defendant Crosby began witnessing grooming behavior from Davis toward John Doe that she later reported to Pickaway County law enforcement on May 20, 2021, made her feel "kinda icky."

b.     In February of 2021, Crosby told Defendant Beckman about the grooming behavior she witnessed, and encouraged Beckman to go to the lunchroom to witness the inappropriate and harassing interactions between Davis and John Doe.

c.     Defendant Crosby witnessed Davis waiting outside of gym class for John Doe on multiple occasions, even though Davis had no educational purpose for doing so.

d.     In approximately February or March of 2021, Davis asked Crosby for her secrecy, and told Crosby that John Doe confided in her that he was in a lot of pain, because he had used hand sanitizer shortly before using the restroom which caused his penis to hurt (hereinafter the "Hand Sanitizer Incident").

e.     Crosby was concerned that Davis knew the aforementioned intimate information about John Doe, later telling the Pickaway County Sheriff's Department that if her own son was comfortable enough sharing such private information with an aide like Davis, Crosby would beat that aide with the aide's own arms Crosby had ripped from her, indicating that Crosby knew Davis had an inappropriately close and possibly abusive

relationship with John Doe.

f.      On several occasions, Defendant Crosby noticed that Davis would have John Doe hold her soda and candy for her in the lunchroom until Davis was ready to consume it.

g.      Crosby also witnessed Davis and John Doe using Davis' sixth grade Daughter to pass a cell phone back and forth on multiple occasions.

h.      On April 15, 2021, Crosby witnessed the Tattoo Incident.

40.    Despite the harassing and grooming behavior Crosby witnessed, she failed to immediately report it to children's services or law enforcement, or to John Doe's mother, and failed to initiate an investigation into Davis' conduct as required by Board policy. She acted with deliberate indifference to John Doe's safety, and her failures to act were wanton or reckless.

41.    Defendant Rice's knowledge of Davis' grooming, harassing, and abusive behavior included, but is not limited to:

a.      On or about April 7, 2021, Rice communicated her own concerns about Davis' grooming and harassing behavior toward John Doe to Defendant Duchak, including Rice witnessing John Doe holding Davis' lunch for her on multiple occasions.

b.      On April 8, 2021, Rice witnessed Davis pulling John Doe out of class and taking him down the hall to be alone under a darkened and private staircase.

c.      Also on April 8, 2021, Rice emailed Kauffeld expressing serious concerns about Davis' grooming and harassing behavior toward John Doe (hereinafter the "Email"), because both she and TVMS staff were

uncomfortable with the harassing and inappropriate relationship between Davis and John Doe.

d.      Following her Email, Rice continued to witness the same grooming and harassing behavior including Davis and John Doe meeting out front after school, and walking together in the hallways whispering on a daily basis.

e.      On multiple occasions, during the last 30 minute period of the school day (hereinafter "Viking Period"), Rice believed that John Doe was scheduled to be in Duchak's group, but was instead seen with Davis on multiple occasions.

42.     Despite the harassing and grooming behavior Rice witnessed, she failed to immediately report it to children's services or law enforcement, or to John Doe's mother, and failed to initiate an investigation into Davis' conduct as required by Board policy. She acted with deliberate indifference to John Doe's safety, and her failures to act were wanton or reckless.

43.     Defendant Duchak's knowledge of Davis' grooming, harassing, and abusive behavior included, but is not limited to:

a.      Upon information and belief, for five to six weeks, Duchak was aware that John Doe was not in his assigned classroom during Viking Period, because he was with Davis. During this time no teacher, administrator, or staff member looked for John Doe, removed him from Davis' control, or otherwise protected him from Davis' grooming and harassing conduct.

b.      Upon information and belief, during the five to six weeks that Duchak was aware that John Doe was with Davis during Viking period instead of in his assigned classroom, neither Duchak nor any other teacher, administrator or

staff member notified John Doe's parents that he was missing from his assigned class.

c. On or about April 7, 2021, Duchak received notice of Rice's concerns relayed in the Email about Davis' harassment and grooming of John Doe.

d. On or about April 15, 2021, Duchak became aware of the Tattoo Incident when Beckman and Crosby reported it to her.

e. Approximately one week prior to Davis' rape of John Doe, Duchak taught a yoga class in the gym, and witnessed Davis and John Doe staring at one another, even though Davis had no reason to be in the gym because it was not her one-on-one student's gym period.

f. On May 6, 2021, four days before John Doe was raped by Davis, District employee Geryalyn Lupfer (hereinafter "Lupfer") reported to Duchak that she witnessed John Doe hiding in the restroom waiting for Davis on four different occasions.

g. On May 7, 2021, three days before John Doe was raped by Davis, Duchak witnessed John Doe waiting on Davis again in the lunchroom, saw John Doe walking in the hall with Davis looking over his shoulder at Duchak, and saw Davis follow John Doe into a dark classroom so they could be alone together.

44. Despite the harassing and grooming behavior Duchak witnessed and had knowledge of, she failed to immediately report it to children's services or law enforcement, or to John Doe's mother, and failed to initiate an investigation into Davis' conduct as required by Board policy. She acted with deliberate indifference to John Doe's safety, and her failures to act

were wanton or reckless.

45.     Defendant Kauffeld's knowledge of Davis' grooming, harassing, and abusive behavior included, but is not limited to:

a.     On April 8, 2021, Kauffeld received the Email from Rice regarding her serious concerns of Davis' behavior toward John Doe. Upon receipt of Rice's Email, Kauffeld told Rice that Beckman and Crosby had also expressed concerns to him about Davis' conduct toward John Doe.

b.     On April 15, 2021, Beckman and Crosby notified Kauffeld of the Tattoo Incident. In response, Kauffeld merely directed Aquino to talk with Davis about staff perceptions.

c.     Upon information and belief, on approximately April 23, 2021, a representative of the teacher's union approached Kauffeld about several union members' concerns of the inappropriate and grooming behavior Davis was exhibiting toward John Doe, but Kauffeld refused to meet with the union on the matter.

d.     In response to the union's request for a meeting, on or about April 23, 2021, Kauffeld directed Aquino to have a second conversation with Davis about John Doe, but failed to discipline or terminate Davis, failed to implement any measures to protect John Doe from Davis, and failed to make any mandatory reports about Davis' conduct.

e.     Approximately one week before Davis raped John Doe, Beckman reported to Kauffeld that she witnessed Davis hand off a cell phone to John Doe, but Kauffeld failed to immediately discipline or terminate Davis, failed to

immediately implement any measures to protect John Doe from Davis, and failed to immediately make any mandatory reports about Davis' conduct.

46.     Despite the harassing and grooming behavior Kauffeld witnessed and had knowledge of, he failed to timely discipline or terminate Davis, failed to report Davis' conduct to children's services or law enforcement, or to John Doe's mother, and failed to initiate an investigation into Davis' conduct as required by Board Policy. He acted with deliberate indifference to John Doe's safety, and her failures to act were wanton or reckless.

47.     Defendant Aquino's knowledge of Davis' grooming, harassing, and abusive behavior included, but is not limited to:

    a.      Sometime in early April of 2021 after Rice's Email to Kauffeld, Aquino talked with Davis about the time she was spending with John Doe, including the unplanned time during Viking Periods; Aquino advised Davis to distance herself from John Doe due to staff perception of Davis and John Doe's relationship, but failed to discipline Davis or otherwise monitor Davis' time with John Doe.

    b.      On or about April 23, 2021, at the direction of Kauffeld, Aquino had a conversation with Davis in which Davis attempted to justify her extraordinary closeness with John Doe by alleging that John Doe had issues with his mother and Davis was helping him, but Aquino failed to corroborate Davis' claims with John Doe's parents or with John Doe himself. In fact, Davis fabricated John Doe's issues with his mother to deflect the attention of Aquino.

    c.      Sometime in April of 2021, after witnessing John Doe leaving the school

building with Davis for multiple weeks without any record of John Doe's parents' permission on file, Aquino finally called Jane Doe to verify she was aware that John Doe was getting rides from Davis. During this phone conversation, when Plaintiff Jane Doe asked Aquino if there was anything else Jane Doe needed to know, Aquino failed to disclose any of the numerous reported concerns and complaints about Davis' harassing and grooming behavior toward John Doe, and failed to inquire about Davis' allegation of purported issues at John Doe's home with Jane Doe.

48.     Despite the harassing and grooming behavior Aquino witnessed and had knowledge of, she failed to report it to children's services or law enforcement, or to John Doe's mother, and failed to initiate an investigation into Davis' conduct as required by Board policy. She acted with deliberate indifference to John Doe's safety, and her failures to act were wanton or reckless.

### The Rape

49.     On May 10, 2021, after more than three months of relentlessly and openly harassing and grooming John Doe on District premises in front of TVMS staff, Davis raped John Doe at her home.

50.     On February 28, 2022, in Pickaway County Common Pleas Court in Circleville, Ohio, Davis pled guilty to Rape, a felony of the first degree.

51.     On April 1, 2022, Davis was sentenced to ten years to life in prison for the rape of John Doe.

52.     On May 11, 2021, the day after Davis raped John Doe, and approximately one week after Kauffeld had actual notice of John Doe and Davis secretly sharing a cell phone,

Kauffeld called Plaintiff Jane Doe to the school to notify her that Davis would be terminated from her position at TVMS because he had reason to believe that Davis had been messaging John Doe on social media, falsely implying to Plaintiff Jane Doe that TVMS administration had just then been alerted to Davis' harassing and grooming behavior despite many months of previous complaints.

53. On May 14, 2021, four days after Davis raped John Doe, Plaintiff Jane Doe then received notification from TVMS administration that John Doe had posted a TikTok video discussing suicide. Plaintiff Jane Doe immediately rushed John Doe to Nationwide Children's Hospital to be evaluated, and while there, discovered that Davis raped John Doe four days earlier.

**Deliberate Indifference & Wanton or Reckless Conduct**

54. Upon information and belief, TVMS policy required parent or guardian permission for a student to leave District premises via any means other than their assigned bus or previously arranged chauffeur. Davis was never designated by John Doe's parents or guardians to be a person authorized to transport John Doe to or from school, yet multiple TVMS staff knew John Doe left school with Davis on multiple occasions, and failed to intervene, and failed to protect him from Davis. This was in violation of Board policy.

55. Upon information and belief, Davis was an at-will employee of the Board and could have been terminated with or without cause at any time.

56. Despite Davis' consistent and relentless disregard of Acquino's purported instructions to distance herself from John Doe in March and April of 2021, Davis was not terminated or disciplined in any way by the TVMS administration or the Board until May 11, 2021, which was too late to protect John Doe from Davis.

57. Defendants Board, Kauffeld, and Acquino had authority to take corrective action

against Davis, had notice of her sexual harassment of John Doe which had a great probability of causing John Doe harm, yet failed to investigate the harassment and failed to stop it, which demonstrates a complete failure to exercise any care toward John Doe, to whom Defendants owed a duty of care. Defendants Board, Kauffeld and Aquino consciously disregarded or were indifferent to the known and obvious unjustifiable and substantial risk of harm to John Doe.

58.     Because Defendants failed to investigate any of the complaints and reports of TVMS staff regarding Davis' grooming and harassment of John Doe, Davis was able to continue her grooming and harassment, which enabled her to succeed at raping John Doe.

59.     Defendants violated District policy by failing to investigate Davis' conduct and behavior toward John Doe, by permitting John Doe to leave TVMS premises with Davis without permission of John Doe's mother on file, and by failing to ensure that John Doe received an education free from discrimination and harassment.

60.     Defendants' gossiping about Davis' behavior and conduct, but simultaneous failure to make any formal reports, initiate an investigation, or protect John Doe from Davis fell woefully short of their fiduciary duty to John Doe, and their failure to act to protect John Doe was wanton or reckless, and deliberately indifferent.

61.     Defendants had a duty to create and implement policy that included the proper supervision and discipline of employees, including Davis, but Defendants failed to implement such policy with Davis.

62.     Defendants' repeated failure to comply with R.C. 2151.421 by making reports of suspected child abuse or neglect enabled Davis to continue her grooming, abuse, and harassment of John Doe on District property.

63.     Defendants' failure to notify John Doe's mother of the inappropriate and harassing

relationship between John Doe and Davis further enabled Davis to continue grooming and abusing John Doe.

64.    Defendants' reckless or wanton, and deliberately indifferent action and inaction has caused and continues to cause John Doe harm, including but not limited to anxiety, depression, and an inability to bond with his peers and family; it has also caused John Doe embarrassment, ridicule, and humiliation at both TVMS and the school district to which John Doe and his family were forced to relocate after Davis raped him.

65.    Defendants' reckless or wanton, and deliberately indifferent action and inaction has caused and continues to cause Jane Doe harm, including but not limited to anxiety, depression, and significant emotional distress due to the inability of John Doe to emotionally bond with and confide in her.

## FIRST CLAIM FOR RELIEF
### Violation of Title IX, 20 U.S.C. § 1681, et seq. v. All Defendants

66.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

67.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) requires that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

68.    At all times relevant to this Complaint, the District and/or Board were recipients of federal funding and are therefore subject to the requirements of Title IX.

69.    Sexual harassment is a form of discrimination under Title IX.

70.    Title IX requires a district to promptly and reasonably respond in a manner that is not deliberately indifferent whenever any employee knows or reasonably should know of possible

sexual harassment occuring.

71. A hostile environment is created when a student is sexually harassed, and the harassment is sufficiently severe and pervasive and objectively offensive, such that it denies or limits the student's ability to participate in or benefit from an education program.

72. John Doe was the victim of a hostile environment and the victim of unwelcome sex-based conduct by Davis, including but not limited to Davis stalking and following John Doe throughout the school days, requiring John Doe to hold her lunches for her, requiring John Doe to wait for her at lunch dismissals, requiring John Doe to rub CBD on himself to lower his inhibitions, escorting John Doe to and from the restroom, initiating intimate conversations with John Doe about his genitalia, and touching John Doe on a regular basis (collectively "Unwelcome Conduct"). The Unwelcome Conduct was objectively offensive, as Ohio law criminalizes romantic and sexual relationships between adults and children under 13 years of age, and it was sufficiently severe and pervasive, because it occurred on a daily weekday basis for nearly four months, and caused John Doe to be depressed, anxious, and unable to participate in or benefit from his educational program.

73. John Doe met the definition of a complainant under Title IX, because he was an individual who was the alleged victim of conduct that could constitute sexual harassment.

74. By at least March of 2021, the Defendants knew or had reason to know that they possessed actual and constructive knowledge they could be liable under Title IX for Davis's sexual harassment, sexual grooming, sexual discrimination, and sexual abuse of student, John Doe.

75. District email correspondence and recorded interviews of District staff, including Defendants Beckman, Crosby, Duchak, Rice, Aquino, and Kauffeld, demonstrate that the District

and/or Board had constructive and actual knowledge of Davis's sexual harassment, sexual grooming, and sexual discrimination of John Doe, which constitutes sufficient notice under Title IX.

76.     Upon information and belief, Defendants failed to make a report of Davis' conduct toward John Doe to the District Title IX Coordinator.

77.     The Defendants acted with deliberate indifference to the rights and safety of John Doe by failing to respond to Davis's sexual harassment of John Doe in a way that was not clearly unreasonable in light of the known circumstances; failing to offer John Doe supportive measures; failing to inform John Doe of the grievance process available to complainants; and failing to investigate the sexual harassment, grooming, and abuse of John Doe.

78.     The deliberate indifference of Defendants left John Doe vulnerable to Davis' sexual harassment and grooming, which caused John Doe to suffer sexual abuse by Davis, and denied John Doe his constitutional right to equal educational opportunity on the basis of his sex.

79.     As a direct and proximate result of Defendants' conduct, John Doe suffered sustained and severe bodily injury, sickness and/or disease, including but not limited to depression, anxiety, anger, nightmares, sleep disturbance, and as a result he will continue to suffer physical and mental pain and suffering, emotional distress, loss of a normal life, medical and counseling expenses, and loss of income an/dor impairment of earning capacity.

80.     As a direct and proximate result of Defendants' conduct, John Doe was deprived of equal access to educational opportunities and is entitled to monetary relief.

81.     As a direct and proximate result of Defendants' conduct, Jane Doe suffered damages and continues to suffer damages.

## SECOND CLAIM FOR RELIEF
**42 U.S.C. § 1983 v. Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice & John**

**Roes 1-5**

82.　　Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

83.　　Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5 knew or reasonably should have known that Davis posed a threat of harm to John Doe based on their actual and/or constructive knowledge of her sexual harassment, grooming, and abuse of John Doe.

84.　　Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5 were aware that Davis perpetuated the sexual harassment and sexual grooming against John Doe on District property utilizing her access to John Doe through her employment with the District.

85.　　With deliberate indifference, Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5 failed to act to protect John Doe as required by federal law Title IX.

86.　　John Doe was deprived of his constitutional right to equal protection of laws under the Fourteenth Amendment by Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5 creating and fostering an environment at TVMS where John Doe was left vulnerable, unprotected, and subject to sexual harassment, grooming, and abuse by Davis, an employee of the District.

87.　　Defendants' conduct deprived John Doe of his constitutional right to his personal security and bodily integrity.

88.　　Upon information and belief, Defendants' custom or pattern was to not investigate or enforce Title IX when an educator engaged in sexually harassing behavior.

89.　　42 U.S.C. § 1983 affords Plaintiff a civil cause of action for damages. 42 U.S.C. §

1988 identifies damages, court costs, litigation expenses, and attorney's fees as the remedies available in an action brought pursuant to 42 U.S.C. § 1983.

90.     As a direct and proximate result of the conduct of Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice and John Roes 1-5, as described herein, Plaintiff has suffered sustained and severe bodily injury, sickness and/or disease, including but not limited to depression, anxiety, anger, nightmares, sleep disturbance, and as a result he will continue to suffer physical and mental pain and suffering, emotional distress, loss of a normal life, medical and counseling expenses, and loss of income an/dor impairment of earning capacity.

91.     Justice and the public good require an award of punitive or exemplary damages in a sum which will serve to punish Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5 and to deter similar conduct.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 v. Defendant Board**

92.     Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

93.     The District and Board established and fostered a policy, practice or custom of permitting sexual harassment, sexual grooming and sexual abuse to occur without investigation, without compliance with mandatory reporting requirements, and without corrective action.

94.     Such policy, practice or custom includes but is not limited to failing to report the sexual harassment and sexual grooming of students to law enforcement or children's services; failing to protect or insultate students from known risks of harassing and abusive behavior of Davis; failing to educate students and parents on how to identify inappropriate conduct between a student and adult; permitting Davis to have continued and unsupervised contact with students;

failing to abide by the requirements of Title IX; and failing to notify the legal custodians of students of the suspected sexual harassment, sexual grooming, and sexual abuse of John Doe by Davis.

95.    Such policy, practice, and custom demonstrates a reckless disregard and deliberate indifference to the consequences that such action or inaction may and did have on students at TVMS, including John Doe.

96.    The District and Board has policymaking authority and exercised that authority in making decisions that perpetuated and/or allowed the sexual harassment, sexual grooming, and sexual abuse of John Doe by Davis.

97.    John Doe was deprived of his constitutional liberty interest and equal protection under the Fourteenth Amendment by the District and Board's creation and promotion of policies, customs, or practices that fostered an environment that allowed John Doe students, including John Doe, to be sexually harassed, sexually groomed, and sexually abused by Davis, an agent, servant, and/or employee of the District.

98.    42 U.S.C. § 1983 affords Plaintiff John Doe a civil cause of action for damages. 42 U.S.C. § 1988 identifies damages, court costs, litigation expenses, and attorney's fees as the remedies available in an action brought pursuant to 42 U.S.C. § 1983.

99.    As a direct and proximate result of the conduct of the District and Board as described herein, Plaintiff has suffered sustained and severe bodily injury, sickness and/or disease, including but not limited to depression, anxiety, anger, nightmares, sleep disturbance, and as a result he will continue to suffer physical and mental pain and suffering, emotional distress, loss of a normal life, medical and counseling expenses, and loss of income an/dor impairment of earning capacity.

100.    Justice and the public good require an award of punitive or exemplary damages in a sum which will serve to punish the District and Board to deter similar conduct.

101.    As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and continue to suffer economic damages and non-economic damages, including but not limited to humiliation, emotional distress, loss of enjoyment of life, and reputation damage.

## FOURTH CLAIM FOR RELIEF
### Civil Liability for Criminal Acts Under R.C. § 2307.60(A)(1) v. Defendant Davis

102.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

103.    R.C. § 2307.60(A)(1) states that "[a]nyone injured in person or property by a criminal act has, and may recover fully damages in, a civil action…including attorneys' fees and punitive damages."

104.    Davis, without privilege, raped John Doe on May 10, 2021 which was a criminal act under R.C. § 2907.02. David pled guilty to and was convicted of this criminal offense of Rape.

105.    Pursuant to R.C. § 2305.111(A)(1)(b)(iii) and (A)(6) John Doe is the victim of childhood sexual abuse.

106.    As a direct and proximate result of Davis' rape of John Doe, Plaintiffs have suffered and will continue to suffer severe and permanent injuries, economic loss, healthcare related expenses, fear, anxiety, loss of enjoyment of life, and other damages for which Defendant is liable.

## FIFTH CLAIM FOR RELIEF
### Infliction of Emotional Distress v. Defendants Davis

107.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set

forth herein.

108.     Defendant either intended to cause John Doe severe emotional distress or knew or should have known that her action and inaction would result in serious emotional distress to John Doe.

109.     Defendant knew or had reason to know that her Unwelcome Conduct toward John Doe was not only illegal and violated his constitutional right to equal access to his educational program, but she knew or had reason to know that her Unwelcome Conduct would cause and/or was causing Plaintiffs severe emotional distress, including but not limited to depression, anxiety, and fear.

110.     Defendant Davis' conduct was extreme and outrageous, going beyond all possible bounds of decency and should be considered utterly intolerable in a civilized community.

111.     Defendant knew with substantial certainty that her actions would cause severe emotional distress and mental anguish to Plaintiffs.

112.     As a direct and proximate result of Defendant Davis' outrageous conduct, Plaintiffs suffered serious and severe emotional distress, mental anguish, humiliation, depression, anxiety, and fear that no reasonable person can be expected to endure.

## SIXTH CLAIM FOR RELIEF
**Intentional Infliction of Emotional Distress v. Defendants Board, Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5**

113.     Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

114.     Defendants either intended to cause John Doe severe emotional distress or knew or should have known that their action and inaction would result in serious emotional distress to John Doe.

115.    Defendants Board, Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5 knew or had reason to know of Davis' Unwelcome Conduct toward John Doe, and rather than report, investigate, and/or disciplining Davis, Defendants Board, Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice, and John Roes 1-5 enabled, permitted, and otherwise acquiesced to Davis' Unwelcome Conduct and grooming of John Doe.

116.    Defendants' intentional conduct, including their failure to act, was extreme and outrageous, going beyond all possible bounds of decency and should be considered utterly intolerable in a civilized community.

117.    Defendants acted intentionally to cause emotional distress to Plaintiffs, and knew with substantial certainty that their actions and inaction would cause severe emotional distress and mental anguish to Plaintiffs.

118.    As a direct and proximate result of Defendants' outrageous conduct, Plaintiffs suffered serious and severe emotional distress, mental anguish, humiliation, depression, anxiety, and fear that no reasonable person can be expected to endure.

## SEVENTH CLAIM FOR RELIEF
### Wanton or Reckless Conduct v. Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice & John Roes 1-5

119.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

120.    The conduct of Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice and John Roes 1-5 was wanton, because Defendants failed to exercise any care toward John Doe, to whom they owed a duty of care, where there was a great probability that harm would result to John Doe.

121.    The conduct of Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice

and John Roes 1-5 was reckless, because Defendant consciously disregarded or showed indifference to a known or obvious risk of harm to John Doe which was unreasonable under the circumstances and was substantially greater than negligence.

122. As a direct and proximate result of the wanton or reckless conduct of Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice and John Roes 1-5, Plaintiffs have suffered serious, severe, and permanent injuries and damages.

### EIGHTH CLAIM FOR RELIEF
**Liability Pursuant to Respondeat Superior v. Defendant Board of Education**

123. Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

124. Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice and John Roes 1-5 were, at all relevant times herein, employees or agents of Defendant Board and were acting within the scope of their employment and/or agency.

125. Pursuant to the doctrine of respondeat superior, the actions of District employees and/or agents are deemed to be the actions of Defendant Board, so long as the actions occur within the scope of the employment relationship.

126. Defendants Aquino, Beckman, Crosby, Duchak, Kauffeld, Rice and John Roes 1-5 were acting and failing to act within the scope of their employment with Defendant Board, as they observed Defendant Davis' Unwelcome Conduct during the school days on District property, and as a result of their positions as as assistant principal, aides, guidance counselor, principal, and secretaries, respectively, which positions all carry duties of supervision and protection of District students.

127. Defendant Board is liable for the tortious conduct of Defendants Aquino,

Beckman, Crosby, Duchak, Kauffeld, Rice and John Roes 1-5.

128.    As a direct and proximate result, Plaintiffs have incurred and will continue to incur severe and permanent injuries, economic loss, healthcare expenses, fear, depression, anxiety, loss of enjoyment of life, and other damages.

## NINTH CLAIM FOR RELIEF
### Loss of Consortium v. All Defendants

129.    Plaintiffs incorporate by reference each of the preceding paragraphs as if fully set forth herein.

130.    As a direct and proximate result of the reckless or wanton conduct of Defendants and the resulting injuries to John Doe, Defendants have caused Plaintiffs to suffer and to continue to suffer loss of filial consortium including the services, society, companionship, comfort, love, affection, and solace of Plaintffs' mother-son relationship.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for relief as follows:

1.    Judgment in favor of Plaintiffs;

2.    An award of compensatory and consequential damages to Plaintiffs against all Defendants, jointly and severally, in an amount to be determined by the Court and jury in excess of this Court's jurisdictional amount;

3.    An award of punitive damages in an amount to be determined by the Court and jury;

4.    An award to Plaintiffs against all Defendants, jointly and severally, of reasonable

attorneys' fees and costs associated with this action; and

5.    Any and all other relief the Court deems just.

Respectfully submitted,

*/s/ Morgan M. Masters*
Morgan M. Masters (0080858)
Leslie A. Albeit (0086377)
Albeit Masters, LLC
4200 Regent Street, Suite 210
Columbus, OH 43219
O: (614) 454-1200
E: mm@albeitmasters.com
E: la@albeitmasters.com
*Counsel for Plaintiffs*