**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JANE DOE, et al.,**

       **Plaintiffs,**

  v.                                       **Civil Action 2:23-cv-02704
Judge Edmund A. Sargus
Magistrate Judge Kimberly A. Jolson**

**TEAYS VALLEY LOCAL SCHOOL
BOARD OF EDUCATION, et al.,**

       **Defendants.**

**ORDER**

This matter is before the Court on Defendants' Motion for a Federal Rule of Civil Procedure 35 mental examination of Plaintiff John Doe. (Doc. 32). The parties are **ORDERED** to meet and confer, consistent with this Order, and file a joint status report **on or before August 28, 2024.**

**I.    BACKGROUND**

Briefly, this case involves serious allegations against Defendants Teays Valley Local School District Board of Education, Mandy Davis, Michael Kauffeld, Marcy Aquino, Mallory Beckman, Callie Crosby, Joyce Duchak, Amber Rice, and five John Roes. (Doc. 9). Plaintiff John Doe, a minor, and Plaintiff Jane Doe, his mother, allege Defendants' "actions and failures to act upon Defendant Davis' grooming and sexual harassment of Plaintiff John Doe . . . enabled and permitted Defendant Davis, who was 33 years-old, to rape minor Plaintiff John Doe." (*Id.* at ¶ 1). The following allegations are taken from Plaintiffs' Amended Complaint.

In 2020 through 2021, when he was between 11 and 12 years-old, John Doe attended Teays Valley Middle School ("TVMS"), as a sixth grader. (*Id.* at ¶ 17). At that time, TVMS employed Defendant Davis as a one-on-one classroom aide. (*Id.* at ¶ 25). Plaintiffs say that Davis was not assigned to work with John Doe and had no reason to interact with him. (*Id.* at ¶ 26). Yet, beginning in February 2021, Davis "began aggressively grooming John Doe for a sexual relationship." (*Id.* at ¶ 29). This included escorting him to and from classes, lunch, and the restroom; walking so close to him in the hallways their bodies had physical contact; having "intimate conversations" with him at school about his genitalia; communicating with him via cell phone; and giving him cannabidiol oil "to distort his senses, lower his inhibitions, and alter his mind." (*Id.* at ¶ 30). Davis would also pull John Doe out of his classes to speak with him in "unoccupied, dark, and unlit rooms and areas of TVMS." (*Id.* at ¶ 31). Further, Davis would speak with John Doe about her abusive husband and the potential that she could go to jail, and she would threaten suicide "if she could not be with him." (*Id.* at ¶ 32).

After months of this behavior, in May 2021, Davis raped John Doe at her home. (*Id.* at ¶¶ 49–51). Roughly a year later, Davis pled guilty to first-degree rape. *Viewed at* https://www.pickawaycountycpcourt.org/eservices under Case No. 2021CR0078. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)) (permitting courts to take judicial notice of court records that are available online to members of the public).

Plaintiffs allege that the named Defendants, who were all TVMS employees, were aware of Davis's behavior and enabled the grooming to continue by "allow[ing Davis] to spend uninterrupted time with [John Doe] at TVMS, and by failing to discipline or terminate her in response to multiple and consistent complaints of her inappropriate conduct towards and with John

Doe." (*Id.* at ¶¶ 35–36; *see also id.* at ¶¶ 18–23 (alleging Kauffeld was the principal of TVMS; Aquino was the assistant principal; Beckman was a lunchroom monitor and front office assistant; Crosby was a lunchroom monitor; Duchak was a guidance counselor; and Rice was a secretary)). Plaintiffs allege a multitude of incidents when one of these employees witnessed or became knowledgeable about Davis's actions toward John Doe. (*Id.* at ¶¶ 29–48). Plaintiffs allege that at no time did any Defendant report Davis's actions to children's services, law enforcement, or John Doe's mother. (*Id.*). And, say Plaintiffs, Defendants did nothing to protect John Doe from Davis for months. (*Id.*).

For these actions, and others detailed in the Amended Complaint, Plaintiffs bring claims under Title IX and 42 U.S.C. § 1983; claims for civil assault and battery and civil liability for criminal acts under Ohio law; claims for the intentional infliction of emotional distress, wanton or reckless conduct, and loss of consortium; and a claim for liability pursuant to respondeat superior. (*Id.* at ¶¶ 66–136). As relief, Plaintiffs seek compensatory, consequential, and punitive damages, in addition to attorneys' fees and costs. (*Id*. at 29).

Now, under Rule 35 of the Federal Rules of Civil Procedure, Defendants (other than Davis) seek a court order for Plaintiff John Doe to submit to a mental examination with Dr. Cheryl D. Wills. (*See generally* Doc. 32; *see* Doc. 32-2 (Dr. Wills's curriculum vitae)). Plaintiffs filed a response opposing an examination without certain protections for John Doe. (Doc. 36). Defendants filed a reply (Doc. 40). The matter is ready for the Court's review.

II.     **STANDARD**

Rule 35 provides that a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The order "may be made only on motion for good cause and

3

on notice to all parties and the person to be examined" and must "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(A)–(B). "[U]nlike the rules pertaining to the permissible scope of other forms of discovery . . . Rule 35 contains a 'restriction' that the matter be 'in controversy,' and also requires that the movant affirmatively demonstrate 'good cause.'" *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 379 F. Supp. 3d 669, 672 (S.D. Ohio 2019) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964)). Ultimately, the decision to order a mental examination under Rule 35 is within the Court's discretion. *Curatola v. Am. Elec. Power*, No. 1:06-CV-839, 2007 WL 9728954, at *3 (S.D. Ohio Nov. 13, 2007) (citation omitted); *see also Mager v. Wisconsin Cent. Ltd.*, 924 F.3d 831, 839 (6th Cir. 2019) (noting the Sixth Circuit "has not had occasion to address the parameters of the trial court's discretion to grant or deny" a request that a third-party be present during an independent medical examination).

### III. DISCUSSION

Generally speaking, Plaintiffs do not oppose John Doe submitting to a Rule 35 examination. (Doc. 36 at 2). Only the conditions of the proposed examination are at issue. Defendants want Plaintiff John Doe to be alone when he is examined, and they oppose recording the examination. (*Id.* at 3–5). They fear the presence of a third-party or a recording device could impact John Doe's answers, and they highlight other times when John Doe was interviewed alone. (*Id.* at 3–5; Doc. 40 at 2–3). Plaintiffs respond that John Doe's young age and "trust issues" weigh in favor of protections during the examination. (Doc. 36 at 5).

"In general, 'unless the opposing party demonstrates a special need or good cause, most federal courts have not permitted either a recording or an observer of an examination.'" *Madej v. Maiden*, No. 2:16-CV-658, 2017 WL 3446489, at *5 (S.D. Ohio Aug. 11, 2017) (citation omitted)

(cleaned up).  And courts deviate only if there are "special circumstances."  *Stefan v. Trinity Trucking, LLC*, 275 F.R.D. 248, 250 (N.D. Ohio 2011) ("Federal courts have determined that third parties—whether human or electronic—cannot sit in on physical and mental examinations under Federal Civil Rule 35 unless special circumstances require it. These circumstances, however, must be balanced against the interests of the parties involved in the litigation.").

Since the rape, Plaintiff John Doe has had trust issues, and his struggle to trust others has interfered with his counseling sessions.  (*See* Doc. 36-1 at 2 (excerpt of John Doe's deposition describing "trust issues")).  These circumstances, in addition to the sensitive nature of the allegations in this case, meet the good cause standard for John Doe to have added protections during his examination.  *See, e.g.*, *Gohl v. Livonia Pub. Sch.*, No. 12-CV-15199, 2015 WL 1469749, at *3 (E.D. Mich. Mar. 30, 2015) (allowing a third-party observer when the plaintiffs to be examined were minors with cognitive deficiencies and the claims involved their physical and emotional abuse at the hands of a teacher); *S.R. v. Kenton Cnty. Sheriff's Off.*, No. CV 15-143-WOB-CJS, 2018 WL 11420453, at *4 (E.D. Ky. Feb. 12, 2018) (allowing minor plaintiffs' mothers to attend an independent medical examination); *Edgin v. Blue Valley USD 220*, No. 20-2547-EFM, 2021 WL 736321, at *5 (D. Kan. Feb. 25, 2021) (allowing a parent to attend an examination because of the age of the plaintiff and the "sensitive nature of the allegations in the case" related to the minor's sexual harassment at school); *cf. J. H. by Harris v. Williamson Cnty.*, No. 3:14-CV-2356, 2017 WL 11476385, at *3 (M.D. Tenn. Oct. 26, 2017) (noting the need for either third-party or recording protections during an examination had passed due, in part, to the plaintiff "no longer [being] a minor").

The Court acknowledges Defendants' concerns that either an observer or a recording device has the potential to impact John Doe's answers or otherwise be distracting.  But Defendants'

concerns can be eased with restrictions on the chaperone's behavior. *See also Gohl*, 2015 WL 1469749, at *4 ("[A] court warning to observers that they must not interfere has been found to be sufficient to minimize this risk."). Likewise, if the examination is recorded, parameters could be set on the type of the device used and where it is placed.

Accordingly, the Court finds that safeguards during the examination are warranted. But the parties (not this Court) are in the best position to determine which of the proposed protections, or other alternatives, make the most sense. And, if the answer is a third-party observer, the parties are most equipped to choose the chaperone. Further, it does not seem that the parties have conferred on, let alone agreed to, the date or location of John Doe's examination. Still more, it appears that the parties have not yet discussed whether Dr. Wills may ask Jane Doe questions. (*See* Doc. 36 at 10 (stating Plaintiffs were given no notice of Dr. Wills potentially interviewing Jane Doe)).

It is the parties' responsibility to discuss and resolve such matters. To that end, the parties are **ORDERED** to meet and confer and file a joint status report **on or before August 28, 2024,** updating the Court on their efforts and addressing any remaining issues. In the status report, the parties should also provide the notice of examination and detail what Dr. Wills's proposed evaluation will entail.

**IV.   CONCLUSION**

For the foregoing reasons, the parties are **ORDERED** to meet and confer, consistent with this Order, and file a joint status report **on or before August 28, 2024.**

IT IS SO ORDERED.

Date:  August 22, 2024                      /s/ Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE

6